Case number 19-16-93. Kidis v. Jean Reid and others. Argument is not to exceed $15,000. Ms. Bata-Lamenti for the appellants. Good morning. As I told the other attorneys in the prior cases, we are prepared for your cases this morning, so we would prefer it if you'd please spend your time arguing the most critical issues in the case. We will assume that issues that are not argued today that you rely upon the arguments contained in your briefs. It's my understanding that the appellant has reserved five minutes rebuttal. Is that correct? Yes, that's correct. All right, you may proceed. Thank you, your honors. Rachel Bata-Lamenti for appellant. I'll warn police officer John Moran and also warn police officer Jean Reid. I will skip over the facts based on your introduction there that you've reviewed the case file. I would indicate that the first argument is with regard to remediator or a new trial, which was requested after a jury verdict was rendered in this case. The standard of review for that particular motion is de novo. And so let me get into that argument. Are you arguing that we should find that there's no substantive due process basis for a punitive damages award here and that should award zero? Or are you arguing solely that we should remit the award from its current level? So we argue that governmental immunity should have been applied, but on a different standard. So the answer to your question is no, we're arguing for remediator. Not that the jury didn't have the basis to award some punitive, but that the punitive award in this case doesn't have a rational relationship to the damages. Is it because the compensatory damages were only $1? Is that the whole argument? So it's not just because it was $1. It's because the jury was specifically asked the question of whether there was any injury or damage sustained by the plaintiff. They specifically answered that question. Isn't it kind of undisputed that he's got injuries? He's got two black eyes. His chiropractor said he has a neck injury as well. How can we say there's no injury? Yes. So actually the testimony at trial from Mr. Kittis himself and also from the chiropractor was that he sustained injuries during his flight, including injuries to his hand, injuries to his face. He had abrasions all over his body. He was running shirtless through a very dense woods. He hopped over. So your argument is the officer did not beat the plaintiff and cause these injuries, but there's no question that he has the injuries. I guess that was my question. I don't know how you can dispute the fact that he has injuries and you're saying it wasn't caused by your client. I mean, that's the argument. Yeah. Part of the argument. In this case, Mr. Kittis testified he was injured during his flight. He ran almost two miles over two barbed wire fences. He ran through a steel factory, an area of a steel factory with trucks and metal objects that he tripped over. He lost his shoes during his flight. He said that in the dense woods, he was struck by branches, as was our police officer. What is also undisputed, is that when officer Moran caught up with Mr. Kittis in the woods, officer Moran testified that he did deliver two strikes to this individual, one behind his ear and one in his shoulder region. So that is also undisputed that he did strike him two times. And officer Moran also testified that he struck him behind his knee in order to tackle him or take him to the ground. Mr. Kittis testified at trial initially that he lied down on the ground and didn't resist, but later admitted after a discussion came out about what he told his cellmate at the Warren jail, that he in fact was tackled and taken to the ground using a perennial strike to the back of his knee. So there was... Getting back to my question. I mean, I don't think there's any dispute that he has injuries and your argument was that your client did not cause the injuries, but isn't causation normally an issue for the jury? And here the jury obviously found that your client did cause these injuries. And why are we not bound by that? So actually what the jury found, the jury was specifically asked jury question was, was there excessive force used? The answer to the question was yes. The second question asked of the jury was, did the excessive force result in injury or other damages to the plaintiff? And their answer was no. So the actually opposite is true. I mean, your question too, I have the verdict form right in front of me. Was defendant Moran's excessive use of force a proximate cause of the injuries to plaintiff? The jury said no. Right. I mean, and this, this, this, the precursor to this was him resisting arrest, from officer Reed and running and then fleeing the woods, hopping over the fence and doing all these things. The jury took all that into consideration and decided that Moran was not the proximate cause of the injuries, correct? And we need some obligation to- That's exactly the point. Yes. So we have the finding on that. And so when you look at the reasonableness analysis that has to be done with respect to the punitive damages, it asks that question. It asks you to come up with a reasonable relationship between punitive damages and the harm sustained. And in this situation, the jury determined there were no injuries and there were no harm proximately caused by officer Moran's conduct. So you, you have, you have to have- The jury didn't say there were no injuries. They said those injuries, they're obvious injuries. Judge Griffin's completely correct about that. They're obvious injuries. The jury said that they weren't caused by officer Moran. That's right. So that's exactly the point is that you, you now have, you have a use of excessive force according to the jury, but you don't have any injuries that are proximately caused by the officer's use of excessive force. So this is the only defendant named in the case. The punitive damages are rendered only against this defendant who the jury has already concluded did not proximately cause injury or damage. So we have to have a rational, I'm sorry. What's your best case? These punitive damages cases with the ratio and the reprehensibility factors are kind of all over the board. What's your best case? I mean, it's this idea of $1 in damages. And then, you know, by, by ratio purposes and astronomical damage award, it's just sort of hard to match that up. What's, what's the best case you think that we should look at? Well, so I would point the court to the Martin v. Harris case and the Riley v. Kurtz cases. In both of those cases, you have a nominal damage award. You have the Sixth Circuit recognizing that in cases with these $1 nominal damage awards, and these are specifically excessive force cases that I'm citing to you, that in these cases where you have a $1 nominal damage award or $250 nominal damage award, that, that in those cases, you still apply the rational relationship and the what, while you can exceed the single digit ratio, you should not, that, that there are certain guideposts that just are beyond the maximum of what is rational really. Those are both pre-state farm cases, right? Does that matter? I don't think it does. And, and I would then cite to the court, the Hardy v. City of Milwaukee case, where the same analysis was applied. I don't think that that matters. And the reason I don't think it matters is because every case that tracks the state farm analysis and that tracks Riley and Martin in the Sixth Circuit does a similar analysis. And you, you do get awards that are up to $50,000 in punitives where there's a nominal $1 award, but you don't get any higher than that. While I concede that it is not always the case that you get a one-to-one ratio, it is certainly the case that there has to be some rational relationship. And in these nominal damages cases, that rational relationship has never in any Sixth Circuit case exceeded $50,000. The average is between $10,000 and $25,000. In this situation, you have a police officer defendant. You have a jury answering a question that he was not the proximate cause of injury or damages. And then you have a $200,000 award. In such a case, it is incumbent on the court to actually take action to make sure that that rational relationship is satisfied. Counsel, the two cases that you referred to, I just want to make sure I have these right. In Martin, it was a $1 nominal and was remitted down to $10,000. Am I right? It was a $25,000 punitive remitted down to $10,000. So the upshot by our court was $10,000. And in Riley, after a bunch of other things, it was $3 compensatory and the punitives were remitted down to $1,000. Is that correct? That's correct. But you say there are other cases where it's been as much as $25,000 or $50,000. Is that correct? I did find other Sixth Circuit cases, not in the excessive force context, but I do find other Sixth Circuit cases where you have up to a $250 nominal damage award, and you do have an award up to $50,000. I think in those cases that we see that are not governmental defendants or are not excessive force cases, there's much more emphasis on the ratio. And in those cases, you see ratios of 20 to 1 or 12 and a half to 1. You see those ratios upheld against a $250 verdict, for example. In addition to that, I would note that the cases, even that plaintiff sites or appellee sites in their brief never exceed a 50 to 1 ratio. What do you think the right number is? I think that the right number in this case is about $10,000. From all the cases that I see, in the Second Circuit, Seventh Circuit, and Sixth Circuit, all the cases cited both by the trial court, the appellant, that would be the average. Okay. Counsel, I see you're out of time. You can spend your five minutes, your bundle time now, or you can save it. So if you have questions, I'll answer those. Otherwise, I'm comfortable doing that again. Yeah, just very quickly, Counsel, you mentioned Second Circuit. I see the Lee v. Edwards case. As I understand it, it was $1 nominal and the circuit remitted it, but only down to $75,000. Are you aware of that case? Let me look here. Lee v. Edwards, Second Circuit, 1996. I thought that was the very best I found for plaintiff's side, but I'll ask them the same question. If not, you can look at it. Yeah, so I don't have Lee, but I did find three Second Circuit cases that have higher punitive damages. In those cases, you have some compensatory damages. Yeah, I understand that. That's why I was focusing on it. You have real significant injuries, but you still have that ratio that's never going about 50 to 1 in those cases in the Second Circuit. Okay, thank you. You'll have your five minutes for a bundle. Thank you. Let's hear from the appellee. Good morning. No, we're not hearing you. We can't hear you, Mr. Cabot. Sorry about that. This is kind of confusing. Good morning. May it please the court. Sean Cabot, on behalf of the appellee, are you hearing me okay? Yes, yeah, now we are. All right. Of course, as this court is aware, the defendant has argued a litany of errors by the court, essentially every decision that the district court issued. I'm mostly focused on one this morning. Do you want to- Right, and I think that's obviously the biggest case. To begin the analysis, I think it's the decision that was issued by this court back in January that kind of gave us a kind of a heads up on things. In the trial court, a defendant had filed a motion basically to stay the case and preclude execution on the judgment without the posting of a bond. The district court had denied that, and then they appealed it to this court, and this court issued an opinion in order on January 6th. I think that order is very important. Counsel, yeah, this is Judge Boggs. We're not bound by that. Let's go to the meat of the argument here, and my question to you is this. I think you were at trial. What really happened here? Mr. Kittis makes a very compelling case that this officer beat the crap out of him, and the jury finds excessive force, and then they find no proximate injury. Now, I know that the other side tries to say, well, he jumped a fence and he ran through stuff, but if his story is correct, the officer inflicted a lot of injury, and yet the jury doesn't find it, and then they turn punitive. So I'm not saying who's right, but the conflict between the two to me is baffling. So is there anything you can say from the trial level about that? Well, I think that's obviously one of the unique things about the jury system, but I think what happened here, if I'm going to kind of just step back for a moment and look at I think the jury heard a lot of things. They heard, for instance, in the trial transcripts, they heard that yes, Mr. Kittis was fleeing from the officer and he lost his shoes, but they also heard that after he lost his shoes, he said, you know what? I'm going to give up. There's no sense running anymore, and he testifies. He lays on his stomach with his hands out over his head, and he says specifically at the trial, you know, my hands are above my head to the side. When he was asked why he did that, he said, well, I wanted the officers to see I didn't have a weapon and that I wasn't a threat, and so the jury hears that. They also hear Mr. Kittis' testimony that once he's on the ground in an obvious position of surrender, Defendant Moran jumps on him and begins thrusting his knee in his back. They also hear that Defendant Moran choked him and strangled him, punched him in the head two to seven times, punched him in the eyes, and he said, we're going to teach you for running, and he used an basically kick your another explicative for running, and he also testified, and this was corroborated by the inmate in the jail, that he was beaten to the point where he soiled himself, so you have all that, and then basically you have Defendant Moran saying, well, yeah, I did a knee strike or basically these very minimal techniques, but then you have obviously, like Judge Griffin, you had the picture. You have the raccoon eyes. He's not going to get raccoon eyes from jumping over a fence, and in fact, that question was asked during the trial. Did you get any of these black eyes and sore back things from jumping over bushes? Well, no, and so you have jury. Well, this is a really, this is a good, I mean, this is, I'm sure, when he made the argument to the jury, but the jury said that the officer was not the proximate cause of his injuries, which was sort of the gist of Judge Boggs' question. There's a little bit of tension, but the primary finding is no proximate cause, and then the jury picks this number, $200,000, but how can we get around that no proximate cause finding? I mean, that's the factual finding. The number they picked is just a number they picked based upon argument you made, but the factual finding is the no proximate cause. Well, I don't think, you know, I really don't think that that's really the kicker in the case, because obviously, if we had a situation, for example, let's say, you know, the officer just strangled him, choked him, but there's no marks. Let's say he punches him in the gut seven, eight times, but there's no marks. There's no injury. Are we still going to say that there was no excessive force used? No. You know what? The jury said, it doesn't matter what I think, necessarily. The jury said there wasn't, and they told you. You know, if I were on the jury, whether you leave marks or not, if you beat somebody up the way he said, I'd have given him money for people to beat on me that way. So that's the oddity, but maybe there isn't any answer. Let's go to the other part, which is the punitive. So let's assume that despite the fact that it's only $1 in nominal that some, and even your adversary seems to concede that some punitives, because this is pretty bad, but do you have a good case for anything like $200,000 when you have essentially no compensatories? You cited a bunch of cases where, you know, several hundred thousand punitives have been upheld, but those are with some significant compensatories. Your adversaries cited a couple of cases. I've looked at Martin and Riley that she mentioned, and even out of circuit, that Lee case was the most that I found anywhere. What would be your best case for a $1 or $100 getting six figures? Well, I think one of the cases was Romanski. Romanski dealt, I think that was the casino case where I believe initially she was given $279, I think, and compensatory then awarded a million dollars. That was, you know, obviously not a dollar, but it's, I think, comparatively speaking, pretty close. And then that was arguably, and admittedly, down to like 600 and some thousand. So, I mean... Romanowski. In that case, it was the guard involved who roughed up or who treated the woman poorly. And the award as to the guard was $279 in compensatory damages and $500 in punitive damages. Now, as to the casino, which of course the deep pocket of the punitive award was much higher, but as to the guard himself, it was less than a two-to-one ratio. Right. But I think it's important too that we remember that these cases, and then, you know, even the case that came after State Farm, especially after Gore, have all said you have to be very careful when you put all of your eggs, so to speak, in the basket of the ratios. That you can't just look at the ratios and basically make a mathematical computation and say, well, the ratios are skewed, we have to remit. And that's why I think, you know, the district court in its opinion, you know, specifically pages eight and nine and ten did a very good job at focusing on cases, you know, the Payne v. Jones case, the Capito case, and others that looked at other circuits. Payne v. Jones was a $60,000 award. You said O'Neill, I think that was an $80,000 award. I mean, in this case, and the ratio of one of those was like closer to one-to-one, so those don't seem that comparable. Do you have any other cases that were closer? I commend Judge Boggs. I think I had his second circuit case that he identified. But it's just really hard to find a comparable case. I agree with you that the ratio can't be the determining factor here. It's a different type of case, and we should look at the reprehensibility factors, but even then, it's really hard to find a case that supports this kind of thing. But again, I think, you know, yeah, are you going to find a case that says a dollar in nominal? No, but again, when you look at the body of the case law and the arguments that are lifted from that, you cannot focus just on that ratio. And that's what the in general that if we just focus on these ratios, then basically we're always going to, we have the inherent possibility of always dismantling a jury's verdict. And that's the, you know, that's the concern is that when we just look at the ratios, we're going to dismantle these verdicts all the time. And where does that? I'm not, I promise you, I'm not just looking at the ratios. I'm looking at other cases that have also considered all three state farm guideposts. Right. And that's, you know, and that's, like I said, even in the court's opinion, and we looked at those, you know, the court noted even the 150, the 90 and 100,000 punitive damages in court made a specific finding in its opinion that when you address that for inflation, that certainly puts it up to the $200,000 range, which these guideposts, the defendant has to be given fair notice. And that's the kicker fair notice in these cases, clearly, from the others, let's give that notice to this defendant that, hey, your conduct could impugn you, you know, the damages upwards of $200,000. So can I, from a notice point of view, I don't think that the officers read all these cases. But if the notice is, if you don't cause any injuries to a person, which is what the jury found for whether they should have or not, are you likely to be liable for a couple of hundred thousand? I don't think any of the cases do. That's kind of what I was asking is look at the ones with $1 or low dollar nominals that have punitives that get anywhere near six figures. Well, I, what's your best, I mean, Romaneski was a false arrest and hauling off low lady, but the physical force, which is that's where we have a lot of cases, right? Because officers do do bad things and they get sued and they lose, but usually they get a pretty good compensatory award and then you put punitives on top of it. Can you give me a case? Can you give me a case? Can you give me a case anywhere with nominal damages and punitives of six figures or even close to six figures? Now with a nominal of only a dollar that I, that I can recall at this time. Okay. That's fair. That's fair. But, but again, I think, I think we're really focusing on these ratios again, which the courts have cautioned. Let's go, let's go to the, let's go to the, the, the representability. Is the harm cause was physical as opposed to economic. And here the jury said there was no physical harm or economic harm for that matter. I'm not even sure if you went on any of the reprehensibility factors, given the jury's finding about harm. Well, I, I, I think, I think it was, I think it was clearly the, the evidence. You take Kittis' testimony, it's, it's pretty reprehensible. Right. I mean, any, any force, especially when you consider what he testified to that he laid down, any force used on him would be reprehensible. And so I think the jury made that assessment. So I think clearly he meets the reprehensibility. I mean, he soiled himself. He has the two, you know, the black eyes. I mean, you know, that those are the things that the jury, you know, I don't know why the jury did what it did. We can't get it heads. But on the flip side, you know, none of us can get in their heads. But again, the cases certainly suggest, especially when the district court did its analysis and its opinion and looked at these cases and say, these cases back in the nineties, late eighties, and then accounted for inflation. It puts all those numbers at in the $200,000 range. All right, Mr. Cabot, what, what the jury did here obviously was inconsistent, what they did with the compensatory damages and the punitive damages, but are juries allowed to have inconsistent verdicts? Well, I mean, I, I don't know that they're necessarily are or are not. Are they, well, just say hypothetically. The jury's allowed to have inconsistent verdicts. I think they are. And I think it happens a lot. Is it inconsistent or do we kind of sometimes scratch your head and wonder what they did? And I think this is a case, maybe we scratch our head. The jury's often compromised. They trade, you know, it's a trading back and forth between the members of the jury. And I mean, sometimes there's not really a rational explanation for it, but it happens. But we have to determine whether it's legally in error, whether it's reversible error, which is different than whether it makes any sense, I guess. I really don't see it as making any sense, but whether there's a legal basis to upset the verdict is another matter. Well, the jury can't, that's unconstitutional, right? You probably agree with that. They're limited by the constitution, sure, but not necessarily by consistency. That's all. Okay. I see you're out of time. Do you have any, you want to wrap up your argument? I would just rely on our briefs, your honor. Thank you for your time. Okay. All right. Rebuttal. I've got, I think five minutes rebuttal. I can't hear you. Sorry. Yep. Can you hear me now? Yes, we can. This is so nerve wracking. Okay. All right. So go ahead and start. Please. Okay. So I heard the panel ask a question and that is, if the jury's verdict is inconsistent, is that okay? And I want to point you to the language of Campbell, which recognizes that the due process clause, it actually acts to make sure that the jury's verdicts, when they're inconsistent, that, that this remitted or option is to be exercised by the court. It actually requires judicial review to ensure, and I'm quoting to ensure that an award of punitive damage is based upon an application of law rather than a decision makers to grace. So what the court's job is to do in that situation is to ensure that, and I'm quoting again, that the awards are fair, reasonable, predictable, and proportionate in this situation. Sorry, technical. In this situation, we don't have that. We cited a lot of cases. We talked about a lot of cases. I would, I did look for the Lee case while I was off for a minute there. I didn't find it, but I did find the provost case from the second circuit that I think the trial court relied on. And in that situation, the $1 award was remitted. The punitives in that case were remitted down to $10,000. And the second circuit said this 10,000 to one quote approaches the limits of what we would deem consistent with constitutional constraints. And so it is the court's duty to actually remit to make sure that these awards are fair, reasonable, predictable, and proportionate. In other words, that they make sense. In other words, the test for the punitive award, a verdict might be inconsistent or it's hard to match things up. Two things that seem pretty consistent are the approximate cause finding and the nominal damages. One thing that's inconsistent is the punitive award, but that's a constitutional test, right? I mean, that's a constitutional question we have to answer whether that award satisfies due process. That's right. And to do that and what the trial court didn't do, and Judge Riddler, you pointed to it, is to take that three-step inquiry under Campbell. The first one is the reprehensibility analysis. The trial court said, and the appellee is arguing to you, we don't need a reprehensibility analysis. Don't look at the five factors that are set out for that finding per se. We have reprehensibility. That is not the state of the law in any circuit, including this one. The second thing that the appellee is arguing to you and what the trial court did is said, well, we don't need to look at other nominal damage cases. We just need to look at other excessive force cases. The level of harm or level of injury caused to a particular plaintiff is not part of the ratio or step two of the due process analysis that we don't have to consider whether the ratios are balanced in that way, that we can simply look at what the overall number is in an excessive force case. And if that overall number is within the parameters of the overall number awarded here, you're good. That's not what the second factor of the test is designed to do. It actually requires you to look at those ratios. Even the plaintiff's cases, and the plaintiff's cases involve significant debilitating permanent injuries to individuals. They involve employment law type economic damages in addition to that. And in those cases, even in those cases, you don't get above a 50 to one ratio. And in any nominal case, like I said before, I did find one that reached as high as 50,000, but the average is 10 to $15,000 in an award, both in this circuit, the seventh circuit and the second circuit. And we cite those cases extensively. The only other thing I want to use my last minute to touch on is with respect to the attorney fee that was awarded plaintiff on the plaintiff's motion, or the appellee's motion. And that is, there were several unsuccessful claims that were asserted in this case. First being against officer Reed, who was dismissed. There was no legitimate basis for this particular claim. She wasn't even around, and she's a female. And the plaintiff himself testified at the very first deposition in the very beginning of the case. There were all males in the woods when he was allegedly assaulted. And so we spent the rest of discovery arguing about whether or not officer Reed, who was a very attractive lady could be have been mistaken for a male. It turned out that she wasn't, but they maintained that claim. They made a file a motion for summary judgment, same with deliberate indifference. It was undisputed at all times. Even the plaintiff said, neither of the two named defendants were anywhere near him in the station when he soiled himself. And yet they maintained those claims. They made us file a motion, and we went through the whole discovery and motion process to get rid of those claims. I would submit to this panel that the attorney fees should have been reduced proportionately for the dismissed claims. Instead, the trial court carte blanche awarded all everything that was requested by this plaintiff. Okay. Well, he did reduce the amounts in a number of places, did he not? The per hour charge and so on. So he looked at the billing pretty closely, didn't he? Yes. So some of our line items where there was something that looked duplicative or maybe unrelated to the case, those types of things were removed. But the actual billing for one claim versus another claim or some percentage analysis where, you know, you had four claims that were asserted against two parties and only one claim survived against one defendant, there was no analysis done like that and no review of the bill to that extent. Okay. Any further questions? Judge Boggs? Judge Wraggler? All right. Thank you, counsel. These will be submitted. You may call the next case.